STATE OF NORTH CAROLINA v. KEVIN LEE BURROUGHS

No. COA00-1035

(Filed 18 December 2001)

### 1. Robbery— indictment—attempted robbery with a firearm—sufficiency of notice

The trial court did not err by denying defendant's motion to dismiss the charge of attempted robbery with a firearm based on an allegedly defective indictment, because: (1) the indictment properly specified the name of the person from whose presence the property was attempted to be taken, whose life was endangered, and the place that the offense occurred; and (2) the indictment was sufficient to put defendant on notice that he was charged with attempted robbery with a firearm so as to prevent subsequent prosecution for that same offense.

### 2. Robbery— attempted with a firearm—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of attempted robbery with a firearm based on an alleged insufficiency of the evidence, because: (1) the variance between the indictment's allegations and the evidence at trial were concerning superfluous matters; and (2) regardless of the exact property defendant intended to take upon his entry into the store and who owned that property, defendant entered the store with his face covered by a bandana, with his gun drawn and pointed at the store clerk, and with the stated intent to rob the store of its property.

### 3. Criminal Law— deadlocked jury—trial court's reference to the potential for and expense of a new trial

The trial court committed prejudicial error entitling defendant to a new trial in an attempted robbery with a firearm case by charging the jury in violation of N.C.G.S. § 15A-1235 about the

STATE v. BURROUGHS

[147 N.C. App. 693 (2001)]

potential for and expense of a new trial when the trial court learned the jury was deadlocked.

Appeal by defendant from judgment entered 1 December 1999 by Judge J.B. Allen in Chatham County Superior Court. Heard in the Court of Appeals 16 August 2001.

*Attorney General Roy Cooper, by Assistant Attorney General David L. Elliott, for the State.*

*Amber A. Corbin for defendant-appellant.*

BIGGS, Judge.

Defendant Kevin Lee Burroughs was charged with attempted robbery with a firearm. The State's evidence tended to show the following: On 26 May 1999, Garrett Caviness was working in C's Convenience Store, a family owned and operated convenience store located in Bennett, North Carolina. At about 1:50 p.m., he was behind the cash register when he looked up and saw defendant and another man run past the window with guns drawn. The men were wearing bandanas over their faces. Suspecting that he was about to be robbed, Caviness immediately picked up his own gun. Defendant entered the store, with his co-defendant following. Defendant aimed his gun at Caviness, who in turn, aimed his gun at defendant. When he saw Caviness' gun pointed in his direction, defendant, who was about to say something, stopped and dove to the floor. Defendant begged Caviness not to shoot him. Upon seeing Caviness' gun, the co-defendant also dove to the floor, but subsequently fled the scene in his automobile when Caviness turned his attention to defendant. Caviness held defendant at gun point, and demanded that defendant relinquish his gun. When defendant did so, Caviness stepped around the counter to pick the gun up. He then locked the front door and called 911. While awaiting the arrival of law enforcement, Caviness made defendant lay face-down on the floor. At one point, defendant stated that "he had messed up" and that he "shouldn't have done it." Subsequently law enforcement arrived and took defendant into custody. While in custody, and after being apprised of his *Miranda* rights, defendant gave a written statement to Detective T.C. Yarborough, of the Chatham County Sheriff's Department, admitting to devising a plan with his cousin to rob C's Convenience Store. The plan required that defendant would hold the store clerk at gunpoint, while his cousin stole some beer. Defendant

admitted that he covered his face with a "do rag" and entered the store with a .22 Magnum pistol, and that he intended to steal beer.

At trial, defendant testified on his own behalf. Defendant testified that on the morning of 26 May 1999, he and his cousin had been target shooting. Defendant was using a gun that belonged to his grandmother. After target shooting, defendant placed the gun in his vehicle between the seats. When the two men got thirsty, they traveled to C's Convenience Store. The two then began to joke about robbing the store. Defendant testified that he was wearing a "do rag" on his head, and pulled it down over his nose to imitate Jesse James. Defendant also testified that he retrieved the gun from between the car seats. According to defendant, the next thing he knew, he was entering the store with his face covered by the "do rag" and carrying his loaded gun. Defendant insisted, "it was just a joke in the store," and that he had every intention of going in and paying for the goods. Defendant stated that "it just happened." Defendant maintained on cross-examination that he did not know how he ended up face down on the floor in the store. He stated, "I don't remember getting out and grabbing nothing between here and yonder. All I know is I was picking in the car. Next thing I know, I was in the door with a gun in my face so I hit the floor. I wasn't expecting none of this to be going on." As to the statement given to Detective Yarborough, defendant testified that he was scared at the time and did not pay attention to what he told the detective. A jury found defendant guilty as charged. The trial court entered judgment on that verdict, sentencing defendant to a presumptive term of sixty-eight to ninety-one months imprisonment. Defendant appeals.

We note at the outset that those assignments set forth in the record but not argued in defendant's brief are deemed abandoned. *See* N.C.R. App. P. 28(b)(5) (providing that "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned[]").

[1] By his first assignment of error argued in his brief, defendant argues (1) that the trial court lacked jurisdiction to hear this case since the indictment was fatally flawed; and therefore (2) the trial court erred in denying his motion to dismiss. We disagree.

Jurisdiction to try a criminal defendant for a felony is premised upon a valid bill of indictment. *State v. Snyder*, 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996). To sufficiently charge a criminal offense, an indictment must state the elements of the offense with sufficient

detail to put the defendant on notice as to the nature of the crime charged and to bar subsequent prosecution for the same offense in violation of the prohibitions against double jeopardy. *Id.* " 'In an indictment for robbery with firearms or other dangerous weapons (G.S. 14-87), the gist of the offense is not the taking of personal property, but a taking or attempted taking by force or putting in fear by the use of firearms or other dangerous weapon.' " *State v. Mahaley*, 122 N.C. App. 490, 492, 470 S.E.2d 549, 551 (1996) (quoting *State v. Harris*, 8 N.C. App. 653, 656, 175 S.E.2d 334, 336 (1970)). While an indictment for robbery (or attempted robbery) with a dangerous weapon need not allege actual legal ownership of property, *see e.g.*, *State v. Rogers*, 273 N.C. 208, 159 S.E.2d 525 (1968); *State v. Fate*, 38 N.C. App. 68, 247 S.E.2d 310 (1978), the indictment must at least name a person who was in charge or in the presence of the property at the time of the robbery, if not the actual, legal owner. *State v. Moore*, 65 N.C. App. 56, 61, 308 S.E.2d 723, 727 (1983). If the defendant needs further information, he should move for a bill of particulars. *See* N.C.G.S. § 15A-925 (1999).

In the instant case, the indictment read as follows:

The jurors . . . present that . . . the defendant named above unlawfully, willfully and feloniously did steal, take, and carry away and attempt to steal, take and carry away another's personal property, an unknown amount of U.S. Currency and the value of (unknown) dollars, from the presence, person, place of business, and residence of Garrett Caviness. The defendant committed this act having in possession and with the use and threatened use of firearms and other dangerous weapons, implements, and means, an assault consisting of having in possession and threatening the use of a firearm, a pistol, whereby the life of Gar[r]ett Caviness was endangered and threatened.

While defendant argues to the contrary, this indictment properly specified the name of the person from whose presence the property was attempted to be taken, whose life was endangered, and the place that the offense occurred. *See Moore*, 65 N.C. App. at 61, 308 S.E.2d at 727. Defendant's reliance on *State v. Thornton*, 251 N.C. 658, 111 S.E.2d 901 (1960), and *State v. Woody*, 132 N.C. App 788, 513 S.E.2d 801 (1999), is misplaced. Those cases are readily distinguishable from the present case, as they involve the offenses of larceny and/or conversion—offenses in which it is crucial that the identity of the owner of the property be properly alleged and proven at trial. As the present indictment was sufficient to put defendant on notice that he was

charged with attempted robbery with a firearm so as to prevent subsequent prosecution for that same offense, this argument fails.

In that same regard, defendant's argument that he was entitled to a dismissal of the attempted robbery charge, based upon the alleged defective indictment, also fails. This assignment of error is, therefore, overruled.

[2] Defendant next contends that the trial court erred in denying his motion to dismiss for insufficient evidence. This argument is also based upon an allegedly fatal variance between the indictment and the proof at trial.

The indictment alleged that defendant attempted to steal an unspecified amount of cash from the store clerk, Garrett Caviness. As previously discussed, the gravamen of the offense charged here is the taking by force or putting in fear, while the specific owner or the exact property taken or attempted to be taken is mere surplusage. *See Rogers*, 273 N.C. at 212, 159 S.E.2d at 528. Defendant cannot show prejudicial error where the alleged variance between the indictment's allegations and the evidence at trial were as to superfluous matters. Regardless of the exact property defendant intended to take upon his entry into the store and who owned that property, the evidence, in the light most favorable to the State, tends to show that defendant entered the store with his face covered by a bandana, with his gun drawn and pointed at the store clerk, Garrett Caviness, and with the stated intent to rob the store of its property. As this evidence is sufficient to prove the offense charged, the trial court's denial of defendant's motion to dismiss was proper. *See State v. McCoy*, 122 N.C. App. 482, 485, 470 S.E.2d 542, 544, *disc. review denied*, 343 N.C. 755, 473 S.E.2d 622 (1996) (stating that "[i]f there is substantial evidence of the essential elements of the offense charged, or of a lesser included offense, and of defendant being the perpetrator, 'the trial court must deny the motion to dismiss . . . and submit [the charge] to the jury. . . .' " *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992)). Accordingly, this assignment of error is also overruled.

[3] Defendant next argues that the trial court erred in charging the jury, upon learning that they were deadlocked, with an instruction that violated N.C.G.S. § 15A-1235 (1999). We agree.

N.C.G.S. § 15A-1235, which governs the charges that may be given to a jury that is apparently unable to agree upon a verdict, provides in pertinent part:

STATE v. BURROUGHS

[147 N.C. App. 693 (2001)]

(c) If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

N.C.G.S. § 15A-1235(c),(d) (1999). In *State v. Easterling*, our Supreme Court held that under N.C.G.S. § 15A-1235, "a North Carolina jury may no longer be advised of the potential expense and inconvenience of retrying the case should the jury fail to agree." 300 N.C. 594, 608, 268 S.E.2d 800, 809 (1980). However, in *Easterling*, the Court found that defendant was not prejudiced since there was no evidence of deadlock when the court gave his instruction. *Id.* at 609, 268 S.E.2d at 809. In *State v. Mack*, this Court stated, "where the jury is deadlocked, and this fact is known to the trial judge, the mention of inconvenience and additional expense may well be prejudicial and harmful to the defendant, and must be scrutinized with extraordinary care." 53 N.C. App. 127, 129, 280 S.E.2d 40, 42 (1981); *see also State v. Lipfird*, 302 N.C. 391, 276 S.E.2d 161 (1981) (holding that the instruction given to a deadlocked jury, which referred to the possibility of a new trial and the selection of another jury, was prejudicial error); *State v. Buckom*, 111 N.C. App. 240, 431 S.E.2d 776 (1993) (holding that instructing the jury to attempt to reconcile its differences to avoid expense was prejudicial error), *aff'd per curiam*, 335 N.C. 765, 440 S.E.2d 274 (1994); *State v. Johnson*, 80 N.C. App. 311, 341 S.E.2d 770 (1986) (holding that the trial court's mention of the "potential inconvenience" of retrial during re-instruction to a jury, known to be deadlocked, was prejudicial error, even though the judge did not mention the expense of another trial); *State v. Lamb*, 44 N.C. App. 251, 261 S.E.2d 130 (1979) (finding reversible error where the trial judge stated, "[b]oth the state and the defendants have a tremendous amount of time and money invested in this case. If you don't reach a verdict, it means that it will have to be tried again by another jury in this county and that involves a duplication of all of the expense and all the time[]").

In the case *sub judice*, the jury first retired to deliberate at 3:16 p.m. At 4:00 p.m., the jury sent a note to the judge, requesting information on the "four rules for intent." Judge Allen brought the jury

back into the courtroom and instructed the jurors on the definition of intent and the four elements of robbery with a firearm. The jury returned to the jury room to resume deliberations at 4:05 p.m. At 4:45 p.m., the jury advised the bailiff that they were deadlocked at nine to three. The judge then properly instructed the jury pursuant to N.C.G.S. § 15A-1235. Subsequently, however, at about 10:10 a.m. on the next day, when the jury was still unable to reach a decision and sent the judge a note, asking what they were to make of defense counsel's closing remark about defendant facing 123 months imprisonment if convicted, the judge brought the jury back into the courtroom for additional instruction. First, the judge admonished the jury that the punishment of defendant was not their responsibility. He continued,

> Ladies and gentlemen, I want to advise you that if the jury in this trial cannot reach a unanimous verdict, in all probability the case will have to be tried before another jury of 12 citizens here in Chatham County. Superior court sessions and jury trials are very expensive to the taxpayers who pay for the court system. I do not tell you this in any way to pressure you into reaching a verdict because no juror should surrender his honest convictions. I repeat, an honest conviction, for the mere purpose of reaching a verdict.

> However, each and every one of you have a duty to deliberate with a view towards reaching an agreement. You have a duty, as a citizen and having been selected to set [sic] on this jury, to reach a verdict if it can be done[]. With this in mind, I again want to inform you that a jury verdict must be unanimous. That must be all 12 jurors must agree to your verdict as to guilt or no guilty [sic].

> But I say to you that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to an individual judgment. Each juror must decide this case for himself or herself but only after an impartial consideration of the evidence with his or her fellow jurors.

The judge went on, instructing the jury in accordance with N.C.G.S. § 15A-1235, and then sent the jury back to resume its deliberations at about 10:15 a.m. Defense counsel objected to the instructions and requested a mistrial, which was denied. The jury returned its guilty verdict within fifteen minutes of the trial judge's last instruction.

STATE EX REL. MILLER v. HINTON

[147 N.C. App. 700 (2001)]

After reading the instructions of the trial judge, we are unable to perceive any distinguishable differences between the instructions given here and those found to be prejudicial error by our appellate courts in *Lamb*, and its progeny. We therefore conclude that the trial court's reference to the potential for and expense of a new trial was prejudicial error and that defendant is entitled to a new trial.

Having concluded that defendant is entitled to a new trial, we need not address his remaining assignments of error.

New Trial.

Judges MARTIN and McCULLOUGH concur.